## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————————

|  |  |  |
|---|---|---|
| PUBLIC CITIZEN, INC., | ) | |
|     1600 20th Street NW | ) | |
|     Washington, DC 20009, | ) | |
| | ) | |
|         Plaintiff, | ) | Civil Action No. |
| | ) | |
|       v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF THE ARMY, | ) | |
|     104 Army Pentagon, | ) | |
|     Room 2E724 | ) | |
|     Washington, DC 20310, | ) | |
| | ) | |
|         Defendant. | ) | |

—————————————————————————

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      This action is brought to enjoin ongoing and imminent violations of the Privacy Act by the United States Department of the Army (Army). The Privacy Act prohibits any agency from collecting, using, maintaining, or disseminating records describing how any individual exercises rights guaranteed by the First Amendment. At the request of the Vice Chair of the Presidential Advisory Commission on Election Integrity (Commission), many states will soon submit, and at least one already has submitted, such information to the Army. By accepting this data, the Army will violate the Privacy Act's prohibition on collecting such information; if the Army allows the Commission to download this data, it will violate the Privacy Act's prohibition on disseminating this information. Furthermore, once the Commission downloads this information from the Army, there will be no remedy at law for the Army's violation of the Privacy Act. Therefore, Public Citizen, on behalf of its members, sues to enjoin the Army from collecting, using, maintaining, or disseminating this data, in violation of the Privacy Act.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. § 1331, 5 U.S.C. § 552a(g)(1)(D), and

5 U.S.C. § 702. Venue is proper under 5 U.S.C. § 552a(g)(5) and 28 U.S.C. § 1391.

## PARTIES

3.      Plaintiff Public Citizen, Inc., is a non-profit consumer advocacy organization with

members and supporters nationwide. Public Citizen engages in research, advocacy, media activity,

and litigation related to, among other things, government accountability and protection of

consumer rights. Public Citizen brings this suit on behalf of its members who are upset by the

collection of data describing how they exercise rights guaranteed by the First Amendment, and

who have fear and anxiety related to how the Commission intends to use the information, including

their voting histories and political affiliations.

4.      Defendant Army is an agency of the federal government of the United States. The

Army maintains systems of records subject to the Privacy Act.

## STATUTORY FRAMEWORK

5.      Section (e)(7) of the Privacy Act mandates that an agency "maintain no record

describing how any individual exercises rights guaranteed by the First Amendment unless

expressly authorized by statute or by the individual about whom the record is maintained or unless

pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C.

§ 552a(e)(7).  This prohibition applies to any agency that maintains any system of records, even if

the specific record is not incorporated into a system of records. *See Gerlich v. U.S. Dep't of Justice*,

711 F.3d 161, 169 (D.C. Cir. 2013); *Albright v. United States*, 631 F.2d 915, 919 (D.C. Cir. 1980).

6.      The Privacy Act defines a "record" as "any item, collection, or grouping of

information about an individual that is maintained by an agency, including, but not limited to, his

education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph." 5 U.S.C. § 552a(a)(4).

7.     The Privacy Act defines "maintain" as "maintain, collect, use, or disseminate." *Id*. § 552a(a)(3).

8.     The Privacy Act incorporates the definition of "agency" found in the Freedom of Information Act, *id*. § 552a(a)(1), which in turn defines "agency" as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." *Id*. § 552(f).

## FACTUAL BACKGROUND

9.     The Commission was established by executive order on May 11, 2017. Exec. Order No. 13799, 82 Fed. Reg. 22,389 (May 11, 2017).

10.     Under Executive Order 13799, the Commission is directed to "study the registration and voting processes used in Federal elections" and "submit a report to the President that identifies … (a) those laws, rules, policies, activities, strategies, and practices that enhance the American people's confidence in the integrity of the voting processes used in Federal elections; (b) those laws, rules, policies, activities, strategies, and practices that undermine the American people's confidence in the integrity of the voting processes used in Federal elections; and (c) those vulnerabilities in voting systems and practices used for Federal elections that could lead to improper voter registrations and improper voting, including fraudulent voter registrations and fraudulent voting."

11.     The Commission charter mirrors the substantive terms of Executive Order 13799.

12.     Executive Order 13799 names the Vice President as the Chair of the Commission, "which shall be composed of not more than 15 additional members." *Id.* Additional members are appointed by the President, and the Vice President may select a Vice Chair of the Commission from among the members. *Id.* Vice President Pence has named Kansas Secretary of State Kris Kobach to serve as Vice Chair of the Commission.

13.     On June 28, 2017, Vice Chair Kobach sent a letter to the Secretaries of State for all 50 states and the District of Columbia requesting data from state voter rolls. The data requested includes political party and voter history from 2006 onwards (collectively, the Protected Records), as well as full name, address, date of birth, last 4 digits of social security number, active/inactive voter status, cancelled voter status, information regarding any felony conviction, information regarding voter registration in another state, information regarding military status, and  information regarding overseas citizenship. The Vice Chair noted that "any documents that are submitted to the full Commission will also be made available to the public." The letter provided that responses should be submitted by July 14, 2017, "electronically to ElectionIntegrityStaff@ovp.eop.gov or by utilizing the Safe Access File Exchange ('SAFE'), … a secure FTP site the federal government uses for transferring large data files."

14.     On July 5, 2017, in response to litigation initiated by the Electronic Privacy Information Center (EPIC) in the United States District Court for the District of Columbia challenging the Commission's requests for the records (*EPIC v. Presidential Advisory Commission on Election Integrity*, No. 17-1320), Vice Chair Kobach submitted a declaration stating that the records would be submitted through SAFE, and that only narrative responses would be submitted by email. The declaration clarified that the only "documents" that would be made publicly available would be the narrative responses. It also stated that "[w]ith respect to voter roll data, the

Commission intends to de-identify any such data prior to any public release of documents." Vice Chair Kobach also stated that no state had yet provided information through SAFE.

15.     On July 6, 2017, Vice Chair Kobach submitted a second declaration answering questions posed by the judge in *EPIC*. In his declaration, Vice Chair Kobach explained that the SAFE website is operated by the United States Army Aviation and Missile Research Development and Engineering Center (AMRDEC), a component of the Army. Vice Chair Kobach further explained that states will upload the records to SAFE, and the Commission staff will download the records from the website onto White House computers.

16.     Some Secretaries of States and other state officials have stated that they will not comply with the request; others have stated that they will provide the information requested by the Commission if not prohibited by their states' laws. Others have not publicly responded.

17.     On, July 7, 2017, attorneys for the government stated in a hearing in the *EPIC* case that on July 6, 2017, Arkansas had uploaded voter data to SAFE, where it is being stored.

18.     Once the Protected Records are downloaded into the White House computers by the Commission, there will be no adequate remedy available for the violations of the Privacy Act.

## FIRST CLAIM FOR RELIEF
### (Privacy Act)

19.     The Privacy Act permits suit when an agency "fails to comply with any … provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual." 5 U.S.C. § 552a(g)(1)(D).

20.     The Protected Records constitute records describing how individuals exercise their rights guaranteed by the First Amendment.

21.     The Protected Records are not within the scope of any authorized law enforcement activity.

22.     Under the Privacy Act, the Army cannot collect, use, maintain, or disseminate the Protected Records.

23.     Plaintiff's members are adversely affected by the Army's violation of the Privacy Act.

24.     Once the Protected Records have been provided to the Commission, plaintiff will be unable to remedy its continuing harm and thus will suffer irreparable harm absent an injunction.

25.     Plaintiff is entitled to relief enjoining the Army from collecting, maintaining, and disseminating the Protected Records and directing the Army to expunge any Protected Records that are in its possession or come into its possession.

## SECOND CLAIM FOR RELIEF
### (Administrative Procedure Act)

26.     The Administrative Procedure Act (APA) provides that a reviewing court may set aside final agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

27.     The Army's decision to collect, maintain, and disseminate the Protected Records in violation of the Privacy Act is a final agency action that is not in accordance with law.

28.     Once the Protected Records have been provided to the Commission, plaintiff will be unable to remedy its continuing harm and thus will suffer irreparable harm absent an injunction.

29.     If relief is unavailable under the Privacy Act, plaintiff is entitled to declaratory and injunctive relief under 5 U.S.C. § 706 enjoining the Army from collecting, maintaining, and disseminating the Protected Records and directing the Army to expunge any Protected Records that are in its possession or come into its possession.

## PRAYER FOR RELIEF

Wherefore, plaintiff requests that this Court:

A.      Declare that the defendant's maintenance of the Protected Records violates the Privacy Act and, in the alternative, the APA;

B.      Enjoin the Army from collecting, maintaining, using, or disseminating the Protected Records;

C.      Order the Army to expunge all Protected Records collected prior to entry of the Court's order;

D.      Award plaintiff its costs and reasonable attorney fees; and

E.      Grant all other appropriate relief.


Dated: July 10, 2017                    Respectfully submitted,

                                        /s/ Sean M. Sherman
                                        Sean M. Sherman
                                        (D.C. Bar No. 1046357)
                                        Adina H. Rosenbaum
                                        (D.C. Bar No. 490928)
                                        Public Citizen Litigation Group
                                        1600 20th Street NW
                                        Washington, DC 20009
                                        (202) 588-1000

                                        *Counsel for Plaintiff Public Citizen, Inc.*